UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**DELORES DUNN,**

               Plaintiff,

      v.                                       5:00-CV-1747 (HGM/GHL)

**SECRETARY OF THE UNITED STATES,
DEPARTMENT OF THE INTERIOR,
GALE A. NORTON,**

               Defendant.
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **For Plaintiff:** | |
| THALER & THALER | SHARON M. SULIMOWICZ, ESQ. |
| 309 North Tioga Street | |
| P.O. Box 266 | |
| Ithaca, New York 14851-0266 | |
| **For Defendant:** | |
| HONORABLE GLENN T. SUDDABY, | WILLIAM F. LARKIN |
| UNITED STATES ATTORNEY | Assistant United States Attorney |
| FOR THE NORTHERN DISTRICT OF NEW YORK | |
| P.O. Box 7198 | |
| 100 South Clinton Street | |
| Syracuse, New York 13261-7198 | |

**HOWARD G. MUNSON**
**Senior United States District Judge**

### MEMORANDUM - DECISION AND ORDER

### INTRODUCTION

      Currently before the court are Defendant's motion for summary judgment and Plaintiff's

cross-motion for continuance of summary judgment.  The parties have filed their opposition.

Plaintiff premises federal jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and brings her

action pursuant to the Age Discrimination In Employment Act of 1967, 29 U.S.C. §§ 621-634(b)

("ADEA"), 42 U.S.C. §§ 1983 and 1988, the Fifth Amendment to the United States Constitution,

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Civil

Rights Act of 1991.  In her complaint,[1] Plaintiff sets forth five causes of action through which she

alleges: (1) Defendant failed to extend her term appointment or alter her job description so that she

could maintain her position and replaced her with a significantly younger individual in violation of

the ADEA (Count I); (2) Defendant made certain comments evidencing age discrimination, which

created a hostile work environment and violated the ADEA (Count II); (3) Defendant's failure to

extend her term of employment or alter her job description so that she could maintain her position

and Defendant's subsequent replacement of her with a significantly younger individual as well as

the alleged comments violated 42 U.S.C. § 1983 (Count III); (4) Defendant denied her equal

protection under the law in violation of the Fifth Amendment of the United States Constitution

(Count IV); and, (5) Defendant created a hostile work environment by subjecting her to repeated and

continual disparaging remarks regarding her sex and inability to perform certain tasks because she

was a woman in violation of  Title VII (Count V).  For the reasons that follow below, the court

GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion for

continuance of summary judgment.

## BACKGROUND

### I.     Term Appointment

#### A.     *Renewal of Term Appointment*

In June 1991, Plaintiff, Delores Dunn, began a term appointment with the United States

---

[1]Plaintiff initially filed her complaint against then Secretary of the United States Department of the Interior Bruce Babbitt.  Gail A. Norton succeeded Babbitt as Secretary and was substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  Norton relinquished her post effective March 31, 2006.  While Secretary nominee Governor Dirk Kempthorne awaits United States Senate Confirmation, Deputy Interior Secretary P. Lynn Scarlett serves as Acting Secretary.  Under these circumstances, the Court makes no further substitution.

Geologic Survey ("USGS")–a bureau within the United States Department of the Interior–Water Resource Division, Ithaca, New York, as a GS-4 administrative clerk. *See* Dkt. No. 17, Def.'s Statement of Material Facts at ¶ 1. In August 1995, the USGS renewed Plaintiff's term appointment through February 4, 1999. At the time of the renewal, Plaintiff signed a one-page form, Statement of Understanding Concerning Conditions Of Term Appointment, which stated that Plaintiff's appointment was not to extend beyond February 4, 1999, that the appointment would not extend beyond four years, that the appointment did not confer upon her permanent status in the federal service, and that Plaintiff could not be converted noncompetitively to a permanent position. Plaintiff signed the statement on February 6, 1995. *See* Dkt. No. 17, Def.'s Statement of Material Facts at ¶¶ 3-5. Throughout the period of her employment by USGS, Plaintiff maintains that her performance ratings were always excellent or satisfactory, and that she never received a less than satisfactory rating. At all times during the renewal term appointment, Plaintiff's immediate supervisor was Edward Bugliosi, who became the USGS Sub District Chief for the Ithaca Sub District, Water Resource Division in Ithaca, New York, in April 1994.

### B.    *Expiration of Term Appointment*

On July 24, 1998, District Chief, L. Grady Moore sent Plaintiff a memorandum stating that her term appointment was to expire on February 4, 1999, and that there would be no extension of that term, nor would there be a substantially similar position, whether temporary or permanent, available for her. Id. at ¶ 6. On July 29, 1998, Plaintiff sent Moore a response indicating her desire to remain employed by the USGS either through an extension of her current term, or with the creation of a similar position. On August 14, 1998, Moore responded with a second memorandum indicating that he would keep Plaintiff's request in mind, but that he did foresee another full-time administrative position at the Ithaca location. Between December 1998 and February 1999, Plaintiff made repeated requests for a permanent position but was consistently told that there were no

positions available for her.  Plaintiff asserts, however, that she was never told that she was unqualified for her position or for a substantially similar position.  Plaintiff's employment with the USGS ceased February 4, 1999.  *See* Dkt. No. 17, Def.'s Statement of Material Facts at ¶ 9.

## II.    New Position Advertised

Within weeks of Plaintiff's departure, Defendant posted a job opening, Vacancy H-99-618, at www.usajobs.opm advertising a vacancy announcement for a term position, not to exceed four years, at the Ithaca Sub District.  The position had an open period from March 16, 1999, to March 31, 1999.  Defendant subsequently canceled the vacancy announcement apparently because the Department of the Interior regulations prohibit back-to-back term appointments.  As a result, Defendant again posted a job opening, Vacancy H-99-625,   at www.usajobs.opm, which readvertised the vacancy announcement as a permanent position.  *See* Dkt. No. 17, Def.'s Statement of Material Facts at ¶¶ 10-13.  Plaintiff alleges that this readvertised permanent position was almost identical to the one that she had held, one for which she was qualified.

Plaintiff's theory of the case is that Bugliosi was well aware that when Plaintiff's term ended, there would be a need for an administrative employee at the Ithaca Sub District to perform substantially the same functions that Plaintiff had been performing.  Despite this need, Plaintiff believes Bugliosi intentionally led her to believe that there would be no such position available.  Plaintiff alleges that in June 1999, four months after the expiration of her term appointment, she became aware that Defendant created and posted a position substantially similar to the one in which she was previously employed and filled the vacancy with a substantially younger individual.  She contends that she did not apply for the advertised vacancy announcement because Defendant lied to her regarding the availability of such a permanent position.  Understanding that no such permanent position would be available, Plaintiff made no effort to look for the posting and consequently, she was unaware of it.  By the time she became aware of the posting, the position's

open period had expired.  Dkt. No. 20, Pl.'s Statement of Material Facts at ¶ 15.

Defendant contends that Plaintiff did not apply for the vacancy announcement because she perceived a subterfuge underlying the creation of the permanent position and summarily concluded that her application would be futile.  Furthermore, Defendant contends Plaintiff believed that because no one had contacted her about the opening, any time or money she were to have invested would have been wasted, for defendant had predetermined that she would no longer be employed by USGS at the Ithaca Sub District.  *See* Dkt. No. 16, Def.'s Mem. of Law at 6.

### III.    Plaintiff Files an Equal Employment Opportunity Complaint

On June 30, 1999, Plaintiff requested Equal Employment Opportunity ("EEO") counseling, complaining of age discrimination.  On October 12, 1999, Plaintiff filed an EEO complaint in which she alleged age and sex discrimination: Plaintiff referenced that on February 4, 1999, she was not offered a permanent position and that over the course of her employment with the USGS, Bugliosi allegedly told her–"You are not up with the times," "You're living in the past," and "I guess you just don't remember anymore."  Notably absent from Plaintiff's EEO complaint is any allegation that Plaintiff suffered discrimination on June 23, 1999, when she discovered that the USGS hired Haire, although she does reference that the USGS began seeking her replacement "almost as soon as [her] employment was terminated."  *See* Dkt. No. 16, Ex. C.  Plaintiff's EEO complaint resulted in an investigation, the findings of which were detailed in a Report of Investigation issued by the Department of the Interior on August 14, 2000.[2]  *See* Dkt. No. 17, Def.'s Statement of Material Facts at ¶¶ 23-25.  The Department of the Interior's final decision, *see* Dkt. No. 16, Def.'s Mem. of Law at Ex. D, dismissed Plaintiff's complaint for failing to contact an EEO Counselor within the statutorily prescribed period of time.  *See* 29 C.F.R. § 1614.107(a)(2) (dismissing those complaints

---

[2]Plaintiff waived her right to a hearing before the EEOC on her complaint, and requested an immediate final decision from the Director of the Office for Equal Opportunity, Department of Interior.

which fail to meet applicable time limits, forty-five days, contained in §§ 1614.105, 1614.106, and 1614.204(c).  In lieu of filing an appeal to the United States Equal Employment Opportunity Commission ("EEOC"), on November 16, 2000, Plaintiff filed the instant action in the United States District Court for the Northern District of New York pursuant to 29 C.F.R. § 1614.110(b).

## IV.    Plaintiff and the EEO Process While Employed by Defendant

Defendant asserts that as of January 1998, Plaintiff was aware of the EEO process.  Citing Plaintiff's deposition testimony, Defendant submits that Plaintiff believes she posted a Water Resources Division memorandum, dated January 23, 1998, entitled "Zero Tolerance of Discrimination," on the break-room bulletin board.  Again citing Plaintiff's deposition testimony, Defendant asserts that Plaintiff saw either the September 10, 1998, memorandum entitled, "Zero Tolerance of Discrimination and Process for Raising Issues of Harassment" or a similar memorandum to this effect while at the workplace.  Furthermore, Defendant asserts that it distributed discrimination/harassment memoranda throughout the workplace to each and every employee.  Citing Plaintiff's deposition testimony, Defendant asserts that Plaintiff admitted she had "no reason to believe" that she did not receive a copy of such memoranda.  *See* Dkt. No. 17, Def.'s Statement of Material Facts at ¶¶ 17-19.  In her opposition papers, Plaintiff generally denies these allegations asserting that she was only generally aware of the EEO process and that this general awareness did not include knowledge of the EEO's forty-five day filing restriction.  Plaintiff notes that while she may have received copies of the various memoranda, she did not necessarily read them.  *See* Dkt. No. 20, Pl.'s Statement of Material Facts at ¶¶ 17-19.

## V.    Alleged Offending Comments and Remarks

During the course of Plaintiff's employment, Bugliosi allegedly told Plaintiff–"You are not up with the times," "You're living in the past," "You're supposed to be using the computer for the forms," "We don't use typewriters anymore," "I guess you just don't remember anymore," and "You

6

can't do that because you're a female."  At her deposition, Plaintiff testified that she did not mention

any of these alleged statements in the letters she wrote to Moore because she wanted him to focus

on her, because she was not "taught that way," and because  "you take what people hand you and

you keep on trucking."  Plaintiff described the alleged offending comments as normal for her and

as typifying the experience of those in her generation.  *See* Dkt. No. 16, Def.'s Mem. of Law at 7.


**VI.      Plaintiff's Cross-Motion for Continuance–Background**

Pursuant to FED.R.CIV.P. 56(f), Plaintiff moves for a continuance of Defendant's motion for

summary judgment arguing that an affidavit necessary to oppose Defendant's motion is

unexpectedly unavailable.  Plaintiff's counsel seeks to depose Catherine Haire, who at age forty-two

allegedly "replaced" Plaintiff.  Plaintiff represents that despite Haire's prior assistance and repeated

assurances to provide sworn testimony in the form of a sworn affidavit to Plaintiff, two days before

Plaintiff's opposition was due to Defendant, Haire declined to provide an affidavit and has since

refused to cooperate.  Plaintiff has interviewed Haire many times and is reasonably sure of the

content of her anticipated testimony. In her cross-motion submissions, Plaintiff requested a

continuance until such time that Haire's testimony can be compelled by subpoena and her deposition

taken.  Plaintiff's counsel believes such extension will be sufficient time in order for her to subpoena

Haire, schedule and conduct a deposition, and obtain a transcript of the same.

Defendant opposes Plaintiff's cross-motion for continuance.  Defendant protests that the

parties have had adequate time for discovery, noting that the parties already twice agreed to

extensions for discovery: one from the initial date of February 1, 2002, to August 1, 2002, and then

to October 1, 2002.  Defendant argues that Haire's testimony will not produce clear, direct and

substantial evidence because Haire's credibility and character as to untruthfulness will be at issue

during her deposition and at trial.[3]  As an additional concern, Defendant speculates that Haire will seek counsel and invoke her Fifth Amendment right against self-incrimination.  Defendant further argues that Haire's anticipated testimony does not address the merits of its motion for summary judgment: the anticipated testimony neither addresses Plaintiff's failure to request EEO counseling within forty-five days of the alleged discriminatory actions, nor does it address Plaintiff's failure to apply for the publicly advertised Vacancy Announcement H-99-625.

## DISCUSSION

### I.      Standard for Continuance of Summary Judgment

Rule 56(f) permits a motion for continuance of a motion for summary judgment when the party opposing summary judgment has insufficient facts to present its case: "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions taken or discovery to be had or may make such other order as is just."  FED.R.CIV.P. 56(f).  The policy rationale undergirding Rule 56(f) is to allow the non-moving party adequate time for additional discovery to obtain the information it needs to establish a disputed issue of material fact sufficient to overcome summary judgment. *Cf.* Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 925 (2d Cir. 1985) ("[A] denial of access to the relevant information weighs in favor of the party opposing a motion for summary judgment."); B.F. Goodrich v. Betkoski, 99 F.3d 505, 523 (2d Cir. 1996) ("Rule 56(f) allows a party faced with a motion for summary judgment to request

---

[3]Defendant alleges that in March 1999, Haire was dismissed from the United States Postal Service for deliberately mishandling postal funds to cover up dubious transactions.  When Haire applied to the USGS, she failed to note her dismissal from the postal service as required by the USGS employment application.  Subsequently, the Office of Personnel Management conducted an investigation, which revealed Haire's deception and determined that she had also submitted an altered postal service form.  As a result, the Office of Personnel Management ordered the USGS to terminate her employment.

additional discovery, and the Supreme Court has suggested that such a request be granted when the nonmoving party has not had an opportunity to make full discovery.") (quotation omitted). Furthermore, "summary judgment should only be granted [i]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (brackets in original); B.F. Goodrich v. Betkoski, 99 F.3d 505, 523 (2d Cir.1996) ("Rule 56(f) allows a party faced with a motion for summary judgment to request additional discovery, and the Supreme Court has suggested that such a request be granted when the nonmoving party *has not had* an opportunity to make full discovery.") (quotation omitted) (emphasis added); Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 512 (2d Cir. 1989) (denying request under Rule 56(f) for further discovery where "appellants had ample time to conduct discovery" and appellants could not offer proof).

In order to obtain a continuance, Plaintiff must set forth: "(1) what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what effort . . . has [been] made to obtain them; and, (4) why [Plaintiff] was unsuccessful in those efforts." Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995) (citing Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir. 1989)). A party's failure to submit an affidavit is a proper ground for denial of the request. *See* Di Benedetto v. Pan Am World Serv., Inc., 359 F.3d 627, 630 (2d Cir.2004) ("'[T]he failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" (quoting Paddington Partners, 34 F.3d at 1137)). Requests made in filings other than an affidavit also constitute a proper basis for denial. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., 265 F.3d 97, 117 (2d Cir.2001) (affirming district court's decision to

deny a Rule 56(f) request on the ground that the requesting party made its request in its opposition papers to a summary judgment motion).

      *A.      What Facts Are Sought and How Will They Be Obtained?/Anticipated Testimony*

"The requirement that a party identify what facts are sought and how they are to be obtained precludes the party from making purely speculative requests with the hope that beneficial evidence will serendipitously materialize." American Home Assur. Co. v. ZIM JAMAICA, 2006 WL 522748, at *9 (S.D.N.Y. March 2, 2006) (citing Nat'l Union, 265 F.3d at 117 ("[A] district court may refuse to allow additional discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'" (quoting Paddington Partners, 34 F.3d at 1138)).  A party is not entitled to additional discovery where its request is based on conclusory allegations that the affidavits used by the opposing party in support of its summary judgment motion are not credible, Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir.1993) (explaining that a party seeking additional discovery "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"), or where a bare allegation is made that the evidence sought is under the opposing party's control.  210 E. 86th St. Corp. v. Combustion Eng'g, Inc., 821 F.Supp. at 144 ("'A 'bare assertion' that the evidence supporting a Plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).'"(quoting Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 (2d Cir.1981))).

Plaintiff seeks information from Haire, which purportedly provides direct evidence of age discrimination.  Plaintiff represents that Haire's testimony will establish that Bugliosi hired her to replace Plaintiff because of Plaintiff's age.  Specifically, Plaintiff expects to show through Haire's testimony that Bugliosi actively recruited Haire, who is twenty years younger than Plaintiff, to replace her before her term position had even expired while at the same time telling her that there

was no position available for her at the USGS Water Resources Division, Ithaca, New York Sub District.  Plaintiff further represents that Haire will be able to corroborate that Bugliosi made comments about Plaintiff, which provided direct evidence of Bugliosi's discriminatory animus toward Plaintiff based upon her age.  Plaintiff anticipates that Haire will testify that Bugliosi told her that Plaintiff was "slow minded" and "too old to learn" and that Bugliosi admitted to her that he intentionally lied to Plaintiff about the availability of the position, then occupied by Haire, because he did not want Plaintiff working at USGS any longer, because she was too old to train.

### B.    Genuine Issue of Material Fact

The Supreme Court has repeatedly held that "if a Plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a *prima facie* case." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (citing Trans World Airlines v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985)).  Plaintiff asserts that Haire's anticipated testimony will demonstrate that Bugliosi intentionally replaced her, and that her age was a substantial factor in Bugliosi's decision to replace her, thereby overcoming summary judgment without having to demonstrate all of the elements of a *prima facie* case of age discrimination.  Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), once a Plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to produce a legitimate non-discriminatory reason for the employment action.

Defendant does not concede that Plaintiff has established a *prima facie* case of discrimination, but assumes *arguendo* that even if she did, a legitimate non-discriminatory reason existed for her termination, namely that her term expired.  As such, Haire's testimony would be essential for Plaintiff to establish a genuine issue of material fact as to whether Defendant's reason is merely pretextual: Haire's anticipated testimony would demonstrate that Defendant replaced Plaintiff because she was too old, not merely because her term expired.  *See* Carlton v. Mystic

Transportation, Inc., 202 F.3d 129, 136 (2d.Cir. 2000).  Defendant, however, argues that even if Haire were to testify as Plaintiff expects, such testimony would do nothing to mitigate either Plaintiff's failure to request EEO counseling within forty-five days of the alleged discriminatory actions or Plaintiff's failure to apply for the publicly advertised vacancy announcement, H-99-625.

      C.    *Plaintiff's Efforts to Secure Haire's Testimony*

The final two requirements carry less weight: "[F]ailure to comply with the third and fourth requirements is not automatically fatal to a Rule 56(f) affidavit."  Paddington Partners, 34 F.3d at 1139.  "With that said, these third and fourth elements are important considerations for a district court to weigh because they help the court determine whether a party has been dilatory in conducting discovery and is only invoking Rule 56(f) to make up for its own sloth."  American Home Assur. Co., 2006 WL 522748, at *10; *see also* Mendoza v. City of Rome, 70 F.Supp.2d 137, 142 (N.D.N.Y. 1999) ("A party who both fails to use the time available for discovery and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery.").

Plaintiff represents that she was not dilatory in her efforts to obtain Haire's testimony.  Haire had repeatedly agreed to voluntarily provide a sworn affidavit.  In October 2002, Plaintiff's counsel drafted an affidavit setting forth the information that Haire had provided through various conversations with Plaintiff and numerous interviews with Plaintiff's counsel.  Plaintiff's counsel submitted the affidavit for Haire's review via e-mail.  Haire requested that a single change be made to the affidavit before she would sign it.  Plaintiff's counsel amended the affidavit to reflect the requested change.  When Plaintiff's counsel requested Haire to sign the affidavit, Haire began to avoid her.  Plaintiff's counsel telephoned Haire, but she refused to talk and did not return Plaintiff's counsel's telephone calls.  Plaintiff's counsel was able to speak with Haire two days before her client's opposition papers were due to Defendant.  Despite this contact, Haire refused to sign the

affidavit.

> ### D.    *Plaintiff Explains Why Her Efforts Were Unsuccessful*

Plaintiff's counsel asserts that she was unsuccessful in securing Haire's affidavit because she refuses to cooperate.  Initially, Haire appeared to be a friendly witness, for she repeatedly agreed to voluntarily provide a sworn affidavit; thus Plaintiff's counsel perceived no need to depose her. Haire's assurances of cooperation would prove hollow, however, for when it came time for her to sign the affidavit, she refused, indicating to Plaintiff's counsel that she did not want to be involved and that she had spoken to Bugliosi.  Plaintiff's counsel suspects that Bugliosi discouraged Haire from cooperating and testifying and raises the specter of witness tampering by an adverse party.

The Court now turns to address Defendant's motion for summary judgment.  The Court is confident it understands the nature of the anticipated testimony.  Thus, the Court will assume for the purposes of deciding Defendant's motion for summary judgment that Plaintiff would in fact elicit such testimony and incorporates such testimony as it weighs the merits of Defendant's arguments in support of summary judgment.

## II.    Standard for Summary Judgment

The standard for summary judgment is well-settled.  Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).  Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1991) (quoting Federal Rule of Civil Procedure 1).  A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist.  *See* Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990).  In light of this

burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *See* id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed. 2d 176 (1962) (per curiam).   If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986).   A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.   When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.  *See* Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511.

## III.    Plaintiff's Fifth Amendment Claim

As an initial observation, the Court notes that Title VII is the exclusive remedy for employment discrimination by the Federal Government, and thus, Plaintiff's Fifth Amendment claim of denial of equal protection is subsumed within her Title VII claim.  *See* Brown v. Gen. Serv. Admin., 425 U.S. 820, 828-29, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (holding that Title VII "provides the exclusive remedy for claims of discrimination in federal employment"); Person v. United States Dept. of Agriculture, 593 F.Supp. 1054, 1058-59 (E.D.Wis. 1984) (dismissing claims under 28 U.S.C. § 1331, § 1343, § 2201, and § 2202 and Fifth Amendment of the United States Constitution because of Title VII preemption).  Inasmuch as Plaintiff's Fifth Amendment claim is properly asserted within her Title VII claim, the Court dismisses Plaintiff's Fifth Amendment claim.

## IV.    Plaintiff's Section 1983 Claim

42 U.S.C. § 1983 provides, in part, that

Every person who, under color of any statute, ordinance, regulation, custom, or

> usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

Plaintiff fails to state a claim under 42 U.S.C. § 1983 because neither the United States nor its employees act under the color of state law.  John's Insulations, Inc. v. Siska Constr., 774 F.Supp. 156, 161 (S.D.N.Y. 1991).  Clearly the United States Department of the Interior and the USGS are federal entities.  Similarly, the Secretary of the Department of the Interior and Plaintiff's former supervisor were employees of the Federal Government.  Moreover, much like Plaintiff's Fifth Amendment Claim, the ADEA provides the exclusive remedy for federal employees who allege age discrimination.  Ray v. Nimmo, 704 F.2d 1480, 1485 (11th Cir. 1983) (citing Paterson v. Weinberger, 644 F.2d 521, 524-25 (5th Cir. 1981) (ADEA provides exclusive remedy for age discrimination claims by federal employees)).  The Court dismisses Plaintiff's § 1983 claim.

## V.    Plaintiff's Title VII and ADEA Claims are Subject to a "Statute of Limitations" and Jurisdictional Bar

### A.    *Statute of Limitations*

Prior to bringing a suit under Title VII the ADEA, a federal government employee, such as Plaintiff, must timely "'exhaust the administrative remedies at her disposal.'"  *See* Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001) (quoting Downey v. Runyon, 160 F.3d 139, 145 (2d Cir. 1998)).  Pursuant to 29 C.F.R. § 1614.105(a)(1), complaints of discrimination must be brought to the attention of an EEO counselor within forty-five days of the alleged discriminatory matter, or in the case of personnel action, within forty-five days of the effective date of the action.  Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001).  "The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred."  Id.  (citations omitted); Bruce v.

United States Dep't of Justice, 314 F.3d 71, 74 (2d Cir. 2002); Quinn v. Green Tree Credit Corp.,

159 F.3d 759, 765 (2d Cir. 1998).  The EEOC

> shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2).

As to her awareness of the EEO process, Plaintiff testified that she posted a Water Resources

Division memorandum dated January 23, 1998, noting that a zero tolerance discrimination policy

was in effect.  *See* Dkt. No. 16, Ex. E at 33; Ex. O.  Plaintiff also testified that she saw a

memorandum dated September 10, 1998, concerning USGS's zero tolerance of Discrimination and

Process for Raising Issues of Harassment.  *See* Dkt. No. 16, Ex. E at 33-34; Ex. P.  That

memorandum specifies that if an employee of the USGS believed that he or she had been subjected

to harassment, then the employee "should bring these allegations of harassment to the attention of

the Bureau [of] Equal Opportunity (EO) Officer and/or a full-time EO Counselor for priority

consideration within **45 days** from the date of the incident."  *See* Dkt. No. 16, at Ex. P.  In

dismissing Plaintiff's complaint to the EEOC,  the USGS found that the "record demonstrates that

notification of EEO complaint filing procedures were posted at the Water Resources Division,

Ithaca, New York, were [sic] the alleged incident occurred and you had opportunity to acquaint

yourself with EEO complaint filing time frame procedures."  *See* Dkt. No. 16, Ex. D.

If the matter is not resolved after a mandatory counseling period, the EEOC regulations

require the aggrieved employee to file a formal written administrative complaint within fifteen days

of receipt of the EEO counselor's notice of final interview and right to file a formal complaint.  *See*

29 C.F.R. § 1614.106(a), (b).  The employee may then file a civil action (i) within ninety days of

notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* <u>Belgrave</u>, 254 F.3d at 386 (citing 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(a), (b)).

Defendant argues that Plaintiff knew that her term appointment would expire on February 4, 1999, and signed an acknowledgment to that effect. *See* Dkt. No. 16, Ex. F. Plaintiff was not certain when Bugliosi made the alleged discriminatory remarks, and yet they occurred no later than February 4, 1999. Plaintiff did not request EEO counseling until June 30, 1999, or 146 days after February 4, 1999, and more than 100 days more than the forty-five day time limit.

Plaintiff makes a number of arguments with respect to timeliness and adequate notice. Plaintiff criticizes the language of the notices because the January 23, 1998 memorandum does not mention the forty-five day limitation and the September 10, 1998 memorandum references harassment but not claims of discriminatory failure to rehire. Plaintiff argues that whatever general awareness she may have gleaned from such flawed memoranda was insufficient to place her on constructive notice of the forty-five day time limit for initiating EEO counseling. Plaintiff also argues that because the September 10, 1998 memorandum only suggests that victims of discrimination *should* contact an EEO counselor within forty-five days rather than informing victims that they *must* bring such claims within forty-five days or relinquish their claims. *See* Dkt. No. 20, Pl.s' Mem. of Law at 12-13.

Plaintiff has shown no ground to excuse her tardiness. Plaintiff admitted in her deposition that she was saw a memorandum detailing the complaint procedure, which included notice of the forty-five day limitation for initiating EEO counseling. There is no evidence that Plaintiff did not know that the discriminatory incidents had not occurred. All of the incidents of which she complained were directed toward her, and there were no circumstances outside of her control that prevented her from lodging a complaint with the EEO counselor. Thus, none of the regulatory

exceptions apply. Plaintiff directs the Court's attention to <u>Pauling v. Secretary of Dep't of Interior</u>, in which the Second Circuit held that

> Pauling's admitted awareness that he was required to bring discrimination complaints to an EEO counselor does not, in any way, indicate that he was aware that he had to do so within 45 days–or, for that matter, within the five months that the court found unreasonable (citation omitted).   Precisely because the 45-day limitations period is unusually short, the court erred in charging him with knowledge of this time limit on the mere basis of his conceded knowledge of EEO processes generally (citation omitted).   Accordingly, Pauling's awareness of his obligation to initiate contact with an EEO counselor does not preclude the extension of time under § 1614.105(a)(2).

160 F.3d 133, 137 (2d Cir. 1998). Earlier in its opinion, however, the Second Circuit noted a dispute of fact as to "Pauling's access to the locations where these posters were assertedly displayed." <u>Id.</u> at 136.   Here, there is no dispute with respect to Plaintiff's access to the memoranda detailing the EEO process and the forty-five day limitation.   That Plaintiff may have chosen not to read the memoranda is of no moment.   *See* <u>German v. Pena</u>, 88 F.Supp.2d 216, 221 (S.D.N.Y. 2000) (explaining that "a plaintiff may not establish a failure of notice exception to the 45 day time limit merely because he chose not to acquaint himself with the substance of an EEO notification."). Moreover, "contrary to plaintiff's argument, the fact that the poster stated that employees 'should' contact an EEO counselor rather than 'must' does not suggest that this is insufficient notice." <u>Pauling v. Runyon</u>, 960 F.Supp. 793, 805 (S.D.N.Y. 1997).

      B.     *Equitable Tolling Does Not Apply*

Plaintiff argues that the Court should equitably toll the forty-five day time limit because Bugliosi and Moore lied to her about the availability of a new administrative clerk position.   Their alleged deceit caused Plaintiff to be unaware "of her cause of action, which resulted in a delay in contacting an EEO counselor until June 30, 1999."   Dkt. No. 20, Pl.'s Mem. of Law at 16.

Courts have held that time limitations for filing periods under Title VII or the ADEA are subject to equitable tolling, *see* <u>South v. Saab Cars USA, Inc.</u>, 28 F.3d 9, 11 (2d Cir. 1994) (applying

equitable tolling to time limitation for filing civil action under Title VII), but "Federal courts have typically extended equitable tolling only sparingly." Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). "Equitable tolling may be available when: . . . (2) she was induced or tricked by her adversary's misconduct into allowing the deadline to pass, . . . ." Dillard v. Runyon, 928 F.Supp. 1316, 1325 (S.D.N.Y. 1996) (citing Saab Cars USA, Inc., 28 F.3d at 11-12). Equitable tolling applies in circumstances so extraordinary that "it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory." Miller v. IT & T Corp., 755 F.2d 20, 24 (2d Cir.1985). Equitable tolling is not available when the claimant herself fails to exercise due diligence. Dillard, 928 F.Supp. at 1325.

Here, Plaintiff asserts that Bugliosi and Moore's alleged deception compels equitable tolling. The Court disagrees. There is no connection between Plaintiff's claims of a hostile work environment and Bugliosi and Moore's alleged deceit as to the availability of a new position. Similarly, there is but a tenuous connection between Plaintiff's term position expiring on February 4, 1999, and Bugliosi and Moore's alleged deceit as to the availability of a new position. Plaintiff fails to present any evidence that she was unaware of her hostile work environment cause of action, or a cause of action based on the expiration of her term position, because of alleged misleading conduct by Defendant. See Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986); German, 88 F.Supp.2d at 221-22 (explaining that "plaintiff's lack of awareness with respect to [the forty-five day] requirement was due to his own failure to exercise due diligence, foreclosing any possibility of equitable tolling"). Equitable tolling is unavailable. Accordingly, the Court finds that Plaintiff's Title VII and ADEA claims pertaining to alleged discriminatory matters pre-February 4, 1999, are time-barred.

### C.    Jurisdictional Bar

In her opposition papers, Plaintiff adds a new wrinkle to her case, contending that the

discrimination did not occur until June 23, 1999, when Bugliosi hired Haire to fill Vacancy H-99-625. Dkt. No. 20, Pl.'s Mem. of Law at 9.  The Court might be willing to indulge in this argument, but, as noted above, Plaintiff did not set forth such a claim in her EEO complaint.  "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."  Butts v. City of New York Dep't of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993) (citations omitted).  A claim raised for the first time in the district court is "reasonably related" to the allegations in an EEOC charge only when: (1) "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) the plaintiff is alleging "retaliation by an employer . . . for filing an EEOC charge;" or (3) the plaintiff is alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  Holtz, 258 F.3d 62,83 n. 6 (2d Cir. 2001) (quoting Butts, 990 F.2d at 1402-03).  Here, Plaintiff's complaint to the EEOC confined itself to discrimination, which allegedly occurred while Plaintiff was still employed.  The Court's review of the record indicates an insufficient nexus between the allegations contained in Plaintiff's EEOC charge and Plaintiff's arguments contained in her motion papers.  The Second Circuit has similarly explained the analogous EEOC charge requirement with respect to the ADEA: "[t]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC."  Id. (citing Miller v. International Tel. & Tel., 755 F.2d 20, 26 (2d Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)).  Accordingly, the Court lacks jurisdiction to hear Plaintiff's claims and dismisses Plaintiff's Title VII and ADEA claims pertaining to alleged discrimination resulting from USGS's hiring Haire on June 23, 1999.

**VI.     Merits of Plaintiff's ADEA and Title VII Claims**

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1). The class protected by this statutory prohibition is limited to persons forty years of age or older.  *See* id. at § 631.  To establish a *prima facie* case of age discrimination under the ADEA, a Plaintiff must demonstrate that: (1) she was within the protected age group; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and, (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.  *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).  Plaintiff was sixty-two years old when Defendant terminated her employment and thus qualifies as member of a protected class as defined by the ADEA.  Plaintiff, however, failed to apply for a job for which the USGS sought applicants.  Following the expiration of her term appointment on February 4, 1999, Plaintiff applied neither for Vacancy H-99-618 nor for Vacancy H-99-625, both of which Defendant posted at www.usajobs.opm.  Plaintiff argues that her failure to apply for the new position inflicts no damage upon her *prima facie* case.  Plaintiff asserts that she asked her supervisors to "make a place for her," but they refused and affirmatively lied to her about the availability of a position when they knew that another position would be created.  Dkt. No. 20, Pl.'s Mem. of Law at 18.  The Supreme Court has cautioned that "the precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic."  Swierkiewicz v. Sorema N. A.,  534 U.S. 506, 512, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (citing Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).  Nonetheless, the Second Circuit has "read McDonnell Douglas and [Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)] generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting

that on several occasions she or he generally requested promotion." <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 710 (2d Cir.1998) (discriminatory failure to promote); <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 227 (2d Cir. 2004) ("A specific application is required to 'ensure[ ] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer.'" (citing <u>Brown</u>, 163 F.3d at 710)).   As the Second Circuit explained in <u>Petrosino</u>:

> [T]he facts of a particular case may sometimes make a specific application a quixotic requirement.  But the exception is narrow and does not pertain simply because an employee asserts that an aura of discrimination in the workplace somehow discouraged her from filing a formal application.  Rather, to be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer.

385 F.3d at 227 (internal citations and quotations omitted).  Here, there is no evidence that the vacancy in question was not posted, which nullifies the exception to the application requirement.

Title VII provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII encompasses the entire spectrum of "disparate treatment . . . , which includes requiring people to work in a discriminatorily hostile or abusive environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) A hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." <u>Id.</u>

> [H]arms suffered in the workplace are cognizable under Title VII, even when they are not the result of "tangible employment actions," if they arise from conduct (1) that is "objectively" severe or pervasive–that is, if it creates "an environment that a

reasonable person would find hostile or abusive" [the "objective" requirement], (2) that the plaintiff "subjectively perceives" as hostile or abusive [the "subjective" requirement], and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) [the "prohibited causal factor" requirement].

Gregory v. Daly, 243 F.3d 687, 692 (2d Cir.2001) (internal citations omitted).  Determining whether the workplace is permeated with discriminatory intimidation that is severe or pervasive so as to alter the conditions of the victim's employment requires an evaluation of all the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."  Harris, 510 U.S. at 23, 114 S.Ct. at 371.  It is important to note, however, that Title VII is not "a general civility code,"  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."  Petrosino, 385 F.3d at 223.  As to the frequency, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment."  Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002).  The alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 577 (2d Cir. 1989); Tomka, 66 F.3d at 1305 n.5 (citations omitted)  ("[T]he incidents must occur in concert or with a regularity that can reasonably be termed pervasive."); Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.").  Additionally, the employee must subjectively perceive the environment to be hostile, and the environment must be one that a reasonable person would find hostile or abusive.  Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997).  Although actionable

harassment is not confined to sexual advances or other explicitly sexual conduct, "the plaintiff is required to establish that the harassment complained of was based on her gender." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).

The Court is not convinced that the comments of which Plaintiff complains were particularly severe, that they were physically threatening or humiliating or that they occurred with such frequency as to be considered pervasive.  Plaintiff's proffer demonstrates a single[4] off-hand remark with respect to Plaintiff's gender–"You can't do that because you're a female"[5]–which the Court finds is best characterized as a "mere offensive utterance."  Harris, 510 U.S. at 23, 114 S.Ct. 367. The Court does not condone the content of the alleged gender-based statement at issue here, but as to its severity, the bar has been set considerably higher.  *Compare* Alfano, 294 F.3d at 378-380 (collecting cases and finding that five incidents, three of which amounted to different iterations of a single sexual prank, over a four-year period, were too few, too separate in time and too mild to sustain a hostile work environment claim); Quinn, 159 F.3d 768 (finding an appreciative comment about plaintiff's buttocks and a deliberate touching of her breasts insufficient as a matter of law to alter the terms and conditions of employment); *and* Moore v. Transitional Servs., Inc., 1998 WL 71824 at *4 (E.D.N.Y. 1998) (finding that a reference to plaintiff as a "fat bitch" and the act of slamming a door in her face  fell "well short of demonstrating the sort of pervasive, severe conduct that would alter the conditions of her employment and give rise to a claim of hostile workplace sexual harassment") *with* Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001) (finding a triable issue where plaintiff demonstrated that in two and a half years, she was subjected to offensive sex-

---

[4]The other three alleged discriminatory remarks implicate Plaintiff's age but not her gender.

[5]Plaintiff did not include this alleged comment in her EEO Charge but added it in her complaint.

based remarks, disproportionately burdensome work assignments, workplace sabotage and one serious threat of physical harm); Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir. 1997) (holding that the plaintiff had created a triable issue based on ten to twelve instances of explicitly racist conduct in twenty months, where most of the incidents involved racial jokes and epithets that insulted blacks, Puerto Ricans, and people of Middle Eastern origin); Holtz, 258 F.3d at 75-76 (finding a triable issue where during more than one year of employment, plaintiff's harasser touched plaintiff's hand on a "daily basis," made "obscene leers at her," "tried to peer down her blouse and up her skirt," and made "approximately ten or twenty" insinuating remarks about her sex life); Daly, 243 F.3d at 692-93 (holding that allegations that male supervisor made demeaning comments about women, made sexually demeaning statements, initiated unwelcome physical conduct of a sexual nature, intimidated plaintiff by standing "uncomfortably close," and made references to women as easy victims of sexual assault stated a claim for hostile work environment sexual harassment under Title VII); and Pisano, 116 F.3d at 628-33 (finding the existence of a hostile work environment where plaintiff's supervisor "repeatedly referred to her as a 'dumb cunt,' suggested that she was in the habit of performing oral sex for money, ridiculed her pregnancy, commented on her anatomy and his desire to have sex with her, and allowed friends of his who visited him at the office to make crude sexual remarks about her").  Moreover, the USGS employed Plaintiff for more than seven years, but she identified only a single gender-based discriminatory remark in her complaint, which in light of the relatively mild nature of the alleged comment fails to demonstrate the kind of regularity required by Title VII.

Given the Court's analysis of Plaintiff's claims and the parties' respective arguments, the Court finds that Haire's anticipated testimony would do nothing to rebut the legal arguments underlying Defendant's motion for summary judgment and thus DENIES Plaintiff's motion for

continuance of summary judgment.  Furthermore, even if Plaintiff's ADEA and Title VII claims were not barred by the statute of limitations and for lack of jurisdiction, the Court finds that Plaintiff has not met her burden of persuasion as a matter of law and GRANTS Defendant's motion for summary judgment in all respects.

## CONCLUSION

**WHEREFORE,** after careful consideration of the record in this matter and the applicable law, the Court hereby

**DENIES** Plaintiff's motion for continuance of summary judgment and further

**GRANTS** Defendant's motion for summary judgment and dismisses Plaintiff's case in its entirety.

**IT IS SO ORDERED.**

Dated:  May 26 , 2006
Syracuse, New York

_____
Howard G. Munson
Senior  U.S. District Judge